The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, dated November 13, 1996 as:
 STIPULATIONS
1. Plaintiff Geary R. Waters was employed by Weyerhaeuser Corporation, located in Plymouth, North Carolina, on July 6, 1995. All parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on that date.
2. Weyerhaeuser Corporation was self-insured for workers' compensation injuries to its employees on the date in question.
3. Geary R. Waters' average weekly wage on July 6, 1995 will be determined by an I.C. Form 22 or wage records from Weyerhaeuser.
4. Plaintiff sustained an accident arising out of and in the course of his employment with Weyerhaeuser on July 6, 1995.
5. The parties stipulated into evidence, the following medical records:
— Stipulated Exhibit 1 — Dr. Jeon;
— Stipulated Exhibit 2 — Roanoke Medical Center;
 — Stipulated Exhibit 3 — Pitt County Memorial Hospital;
 — Stipulated Exhibit 4 — Quadrangle Medical Specialists/Physicians East;
— Stipulated Exhibit 5 — Carolina Heart;
— Stipulated Exhibit 6 — Washington County Hospital;
 — Stipulated Exhibit 7 — Pamlico Orthopedic Associates; and
— Stipulated Exhibit 8 — Dr. William Lestini.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 44 year old man born January 24, 1952 with a high school education and one and one-half years of technical school. Plaintiff had also served two years in the military. Plaintiff became employed by defendant-employer Weyerhaeuser in April 1972 plugging rolls which required him to put cores in rolls of paper. Thereafter, he transferred to the wood yard for two years, then became a lime kiln helper. Plaintiff then went to Number 5 pulp mill and served as a utility man for three months. In 1976, plaintiff went into the maintenance department as an F-class apprentice pipefitter. At the time of the hearing, plaintiff was a senior mechanic and had been employed as such with defendant-employer for approximately fifteen years.
2. On July 6, 1995, plaintiff suffered a compensable injury by accident arising out of and in the course of his employment with defendant-employer. At that time plaintiff was earning $20.67 per hour and working significant amounts of overtime.
3. On July 6, 1995, just after lunch, plaintiff was on an 8 foot ladder piping up a line to an air conditioner in the finishing department. Plaintiff had the ladder placed as close to the wall as he could as the pipe was on the wall. Plaintiff was putting brackets on the wall. As the plaintiff was on the top of the wall and hooked the last bracket, he began to get down. Plaintiff got tangled in his ladder, slipped and landed hard on his right leg. At the time plaintiff landed on his leg, his leg was straight out and he landed flat footed. At the time plaintiff weighed approximately 230 pounds. Plaintiff felt immediate pain in the right backside of his hip which came around to his right groin area. Plaintiff was being helped by Glenn Halsey that day but Mr. Halsey had gone to get parts so plaintiff got on his utility tricycle and coasted down the ramp to the medical department where he saw the nurse Mrs. Bryant.
4. Plaintiff's supervisor, Robbie Jones, was called and plaintiff was taken to Roanoke Medical Center where he saw Dr. Fisher who sent him to the hospital for x-rays. Plaintiff was given a pain killer and returned to defendant-employer's facility to finish the day. Plaintiff did not actually return to work that day but returned to the facility and filled out an accident report.
5. The following day plaintiff went to Dr. Fisher's office for follow up and Dr. Fisher placed plaintiff on light duty. Plaintiff has remained on light duty ever since that day. Plaintiff primarily does sit down jobs, rebuilds parts or runs errands. He does not perform climbing functions.
6. Plaintiff suffered some prior problems with his right hip and in the summer of 1993 plaintiff was treated by Dr. Jeon. At that time he was told he had arthritis in his right hip and was given anti-inflammatory drugs. Prior to July 6, 1995, plaintiff had never missed any time from work because of his hip and worked significant overtime. Prior to July 1995, plaintiff could do whatever he was instructed to do by his supervisor including significant lifting and standing on his feet all day. Since plaintiff's injury by accident on July 6, 1995, plaintiff's activities have been very limited and the difference in his job performance is noticeable. Plaintiff cannot stand on his feet all day without his hip bothering him and his performance and hip pain associated with the movement are estimated by plaintiff's supervisor to be sixty to seventy percent worse than before the injury by accident. Plaintiff is no longer able to work significant overtime as he did prior to his injury by accident. Plaintiff is most often placed by his supervisor on the job where he can sit or stand.
7. Prior to plaintiff's injury by accident, plaintiff was not limited in his ability to walk, lift and climb. Plaintiff walked fairly long distances around defendant-employer's facility, could climb up and down ladders and did heavy lifting. In addition, plaintiff would sometime work as many as eighty hours per week performing these activities. Prior to plaintiff's fail off the ladder on July 6, 1995, plaintiff experienced some pain in his hip, especially if he worked excessive amounts of overtime. After plaintiff's fall from the ladder on July 6, 1995 where he landed flat footed on right leg with all of his 230 pounds of weight, plaintiff was unable to do climbing, lifting, extensive walking or standing and walked with a pronounced limp.
8. Plaintiff was told by Dr. Joen in July 1993 that he was suffering from arthritis in his hip. Thereafter, in May 1995, plaintiff began having chest pains and was referred to a cardiologist and then a gastroenterologist. Ultimately he was referred to Dr. Randall E. White, a rheumatologist, because the Ibuprofen plaintiff was taking for his hip pain was causing gastric problems. On June 25, 1995, plaintiff presented to Dr. White complaining of hip pain. At that time plaintiff was diagnosed with osteoarthritis and given Relafen, an anti-inflammatory and Cytotex to treat any stomach irritation. At that time plaintiff did not complain of being unable to work, did not request an excuse from work or job modification. Furthermore, plaintiff did not complain of being unable to perform his job duties.
9. After plaintiff's July 6, 1995 fall from a ladder landing on his right foot, plaintiff was seen at Roanoke Medical Center and an x-ray was taken on that date showing degenerative changes in plaintiff's right hip. By July 11, 1995, plaintiff was still in pain which was not being helped by his medication. On August 3, 1995, plaintiff presented to Dr. Venable complaining of problems sleeping because of right hip pain. Dr. Venable prescribed physical therapy for plaintiff and switched him to Ibuprofen. Plaintiff attended physical therapy with Sue Hillard, a physical therapist. Plaintiff was seen initially by Ms. Hillard on August 4, 1995, and a goal was set of lessening the pain plaintiff felt upon weight bearing. Plaintiff attended physical therapy on August 7, August 10, August 15 and August 17, without obtaining the goal of lessening pain. Thereafter, plaintiff was sent back to Dr. Venable who referred plaintiff to an orthopedic specialist, Dr. Edward L. Birdsong.
10. Plaintiff presented to Dr. Birdsong on August 24, 1995 with a limp and complaining of hip pain following a fall from a ladder. On that date x-rays disclosed that plaintiff was suffering from degenerative arthritis of the right hip with narrowing of joint space, sclerosis, spur formation and osteophyte formation. Dr. Birdsong was of the opinion that the difference between plaintiff's July 1996 and August 1996 x-rays shows significant change in the joint space with narrowing and sclerosis which indicated progressing arthritis. Dr. Birdsong diagnosed plaintiff with degenerative osteoarthritis exacerbated or aggravated by a traumatic condition, to wit, plaintiff's fall on his right leg. Plaintiff was prescribed an anti-inflammatory, narcotic pain pills, a cane and physical therapy. Prior to this time plaintiff had not taken any narcotic for pain. Plaintiff followed up with Dr. Birdsong on November 27, 1995 in the same condition. Plaintiff was again seen by Dr. Birdsong on May 28, 1996.
11. On December 20, 1996, Dr. Birdsong evaluated the plaintiff who exhibited no significant change in the x-ray from those x-rays taken in August 1995. Dr. Birdsong was again of the opinion that plaintiff suffered from a pre-existing degenerative arthritis of the hip which was nearly asymptomatic or causing only minimal discomfort which suffered a significant exacerbation of the condition or an aggravation of it upon plaintiff's fall from the ladder on July 6, 1995, to the point that the plaintiff could no longer do his regular job.
12. Plaintiff will most likely never be able to return to his regular job duties as he is unable to bend, squat, carry heavy loads greater than 10 pounds and should perform no climbing ladders, no standing on his feet for a prolonged period of time and no walking distances. Furthermore, plaintiff will no longer be able to work overtime. Plaintiff will probably require a total hip replacement on the right side including the acetabular and femoral surfaces. As a direct and proximate result of plaintiff's July 6, 1995 fall at work, this surgery will be needed more quickly than it would have been had plaintiff not suffered the fall.
13. Plaintiff has not yet reached maximum medical improvement for his hip condition.
14. On July 6, 1995, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer when he fell off a ladder injuring his right hip.
15. As a direct and proximate cause of his injury by accident arising out of and in the course of his employment on July 6, 1995, plaintiff suffered an aggravation, exacerbation and/or acceleration of his degenerative osteoarthritis of the right hip.
16. At the time of plaintiff's July 6, 1995 injury by accident plaintiff was earning an average weekly wage of $1,317.98.
17. As a direct and proximate result of his work-related injury by accident on July 6, 1995, plaintiff has been working on light duty. Since July 6, 1995, plaintiff has been unable to engage in physical activities required by his former job as a direct and proximate result of his July 6, 1995 compensable injury to his right hip. As a result of his compensable injury on July 6, 1995, plaintiff was incapable of earning the same wages with defendant-employer or in any other employment from July 6, 1995 and continuing.
18. Plaintiff has earned a lesser average weekly wage following his July 6, 1995 injury by accident and while he has been on light duty.
19. Plaintiff's injury by accident of July 6, 1995 has diminished his capacity to earn wages.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 6, 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of the plaintiff's work-related injury by accident on July 6, 1995, plaintiff sustained an aggravation, exacerbation and/or acceleration of his osteoarthritis of the right hip, which resulted in hip pain. N.C. Gen. Stat. § 97-2(6).
3. After July 6, 1995 and continuing, plaintiff was incapable because of his work-related right hip pain, to earn the same wages which he was receiving at the time of his injury at the same or any other employment. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to temporary partial disability compensation at a rate of 66 2/3 percent of the difference between his average weekly wage before the injury and the average weekly wage which he earns thereafter from July 7, 1995 and continuing until further Order of the Industrial Commission pursuant to N.C. Gen. Stat. § 97-30.
5. Plaintiff has not yet reached maximum medical improvement and plaintiff has not been assigned a permanent partial disability rating of the right leg. N.C. Gen. Stat. § 97-31.
6. Plaintiff is entitled to have defendant-employer provide all medical treatment, including but not limited to, a right hip replacement, arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay compensation to plaintiff at the rate of 66 2/3 percent of the difference between his average weekly wage before the injury and the average weekly wage which he earns thereafter per week from July 7, 1995 and continuing until further Order of the Industrial Commission pursuant to N.C. Gen. Stat. § 97-30. Portions of this compensation have accrued and shall be paid in lump sum, subject to a reasonable attorney's fee approved in Paragraph 2.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by deducting from that sum and paying directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
3. To the extent the same is reasonably designed to effect a cure of, give relief or lessen the period of disability, defendant-employer shall pay all medical expenses incurred by plaintiff, including but not limited to expenses for a right hip replacement, as a result of his compensable injury.
4. Defendant shall bear the costs.
This 9th day of June 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER